

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Mr. William J. Tucker
Executive Secretary
Game, Fish and Oyster Commission
Austin, Texas

Dear Sir:

Opinion No. 0-4497
Re: Wholesale dealers required to pro-
cure wholesale fish and oyster
dealer's License for each place of
business.

Your request for an opinion is based upon a letter
to Honorable Murrell L. Buckner, Chairman of the Game, Fish
and Oyster Commission, from Mr. J. B. Arnold. The fact
situation presented and question is:

"There are now operating in several of the
larger cities in Texas, fish companies whose head-
quarter offices are located out of the state.
The subject parties are all residents of states
other than Texas and they all obtain all of their
raw fish products in states other than Texas, and
in such other states process and pack them until
the final products is what is known as 'frozen
fish products'. These products are then thorough-
ly packed, after having been beheaded, cleaned,
skinned, and placed through a process of freezing.
This merchandise is then shipped in to Texas and
stored in freezing plants in several of the larger
cities.

"The merchandise is stocked in Texas and sales
are made by local representatives who act in the
capacity of salesmen for the fish companies main-
taining offices in the State of Texas through which
orders and sales are taken and made. Sales are
made in some cases to retailers in broken packages.
Some of the concerns claim that they do not break
the packages and sell only to wholesalers. The
representatives of the fish companies take the orders
and if the purchaser has a credit rating that will
justify the seller to make the delivery on open ac-
count, the merchandise is delivered by the cold
storage companies as indicated by copies of invoices

attached.  In some cases the delivery is made
by the freezing plant on orders of the repre-
sentative of the various companies and when
the credit does not justify the delivery with-
out the cash, the freezing plants have instruc-
tions to make collection when delivery is made
and credit the account of the corporation or
individual who has aquatic products stored there
and from which the delivery is made.

"Mr. George D. Underwood, Merchandise Broker
of Houston, Texas, represents one or more of the
out of state fish companies, frequently mails out
bulletins from his office quoting prices on fish
f.o.b. warehouses in Texas.  See attached copy on
back of one of the bulletins.  Mr. Underwood, per-
sonally, as well as some of the representatives
in the state, has recently procured a wholesale
fish and oyster dealers's license.  There are other
brokers in the state who have not procured a whole-
sale fish and oyster dealer's license.

"The question has arisen as to whether or not
fish companies such as the Atlantic Coast Fish-
eries Company, Fisheries Division, Boston, Mass.,
and The Whiz Fish Products Company, Seattle, Wash-
ington, and others, are due to procure their whole-
sale fish and oyster dealers's licenses since they
store their merchandise with cold storage plants
and deliver to the various dealers throughout the
State of Texas from the cold storage plants in
Texas, on orders from representatives of their
company.

"From information obtained, they are foreign
corporations or individuals storing their aquatic
products in cold storage plants in Texas and their
business is handled by the local representatives,
some of which have purchased the proper license to
operate in Texas.  Some of these representatives
have one or more stocks stored in Texas and unless
the question of inter-state shipment is envolved,
I take the position that under our Game and Fish
laws, the corporations or individuals storing the
stock of aquatic products are due to procure a
wholesale fish and oyster dealer's license for
each place of business.

". . . . . ."

Article 934a, Vernon's Annotated Penal Code, as amended, reads in part:

"Section 1. The following words, terms and phrases used in this Act are hereby defined as follows:

".....

"(b) A 'Wholesale Fish Dealer' is any person engaged in the business of buying for the purpose of selling, canning, preserving or processing, or buying for the purpose of handling for shipments or sale, fish or oysters or shrimp or other commercial edible aquatic products, to Retail Fish Dealers, and/or to Hotels, Restaurants or Cafes and to the Consumer.

".....

"Section 3. The licenses and the fees to be paid for the same are hereby provided for in this Act and are as follows:

".....

"2. Wholesale Fish Dealers' License fee for each place of business, Two Hundred Dollars ($200).

".....

"11. Place of business, as used in this Act, shall include the place where orders for aquatic products are received, or where aquatic products are sold, and if sold from a vehicle, the vehicle on which, or from which such aquatic products are sold, shall constitute a place of business. The license shall at all times be publicly displayed by the dealer in his place of business so as to be easily seen by the public and the employees of the Game, Fish and Oyster Commission. And if any aquatic products are transported for the purpose of sale in any vehicle the license required of such dealer shall be displayed inside of such vehicle. Provided that no person shall bring into this State any aquatic products and in this State offer same for sale without procuring the license required for such a transaction by a dealer in this State, and the fact that such aquatic products were caught in another State shall not

entitle the person claiming to have caught them
to sell same in this State as a commercial fish-
erman."

We held in Opinion No. 0-1596 that the intent of the
Legislature in the passage of Article 934a, supra, was to
require wholesale fish dealers to pay a fee for each place
of business.

We held in our Opinion No. 0-3794 that the term
"places of business" as used in the statute is to be under-
stood and given its usual and ordinary significance.

We believe that the case of Sonneborn Brothers vs.
Cureton, Attorney General of the State of Texas, et al, 262
U. S. 506, decided by the Supreme Court of the United States
and followed many times in subsequent cases eliminates the
question of inter-state commerce from your inquiry upon the
basis of the facts presented. The facts were: Sonneborn
Brothers was a firm of non-resident merchants selling petro-
leum products, with its principal place of business in New
York City. It had an office and warehouse in Dallas and a
warehouse in San Antonio. Sales were made in a number of
ways, among those being by the sale of oil (1) shipped into
Texas and afterward sold from the storerooms in unbroken,
original packages and (2) from sales in Texas from broken
packages. Texas was asserting its right to collect an occu-
pation tax levied on all wholesale dealers in oil based upon
a percentage of the gross amount of sales. The company made
no contention that it did not owe taxes mentioned in (2)
supra, but did deny liability for taxes assessed under (1),
supra.

The opinion written by Mr. Chief Justice Taft holds;

"The question we have to decide is whether
oil transported by appellants from New York or
elsewhere outside of Texas to their warerooms or
warehouse in Texas, there held for sales in Texas
in original packages of transportation, and sub-
sequently sold and delivered in Texas in such
original packages, may be made the basis of an
occupation tax upon appellants, when the state
tax applies to all wholesale dealers in oil en-
gaged in making sales and delivery in Texas.

"Our conclusion must depend on the answer to
the question: Is this a regulation of, or a bur-
den upon, inter-state commerce? We think it is
neither. The oil had come to a state of rest in

the warehouse of the appellants and had become a part of their stock with which they proposed to do business as wholesale dealers in the State. The interstate transportation was at an end, and whether in the original packages or not, a state tax upon the oil as property or upon its sale in the State, if the state law levied the same tax on all oil or all sales of it, without regard to origin, would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject."

It is our opinion, therefore, that the corporations and individuals storing stocks of aquatic products in this State and selling and delivering therefrom by duly authorized agents are subject to and must procure a wholesale fish and oyster dealer's license for each place of business.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Lloyd Armstrong
Lloyd Armstrong
Assistant

LA:mp:wc

APPROVED APRIL 1, 1942
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman